IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

TOM ALEXANDER, ET AL.        §
                             §
VS.                          §    CIVIL ACTION NO.4:08-CV-614-Y
                             §
HOLDEN BUSINESS              §
FORMS, INC., ET AL.          §

ORDER GRANTING THIRD-PARTY DEFENDANT JIM MOODY'S
MOTION TO DISMISS AND VACATING IN PART AND AMENDING ORDER
GRANTING THIRD-PARTY DEFENDANT FROST BANK, N.A.'s MOTION TO DISMISS

     Pending before the Court is the Motion to Dismiss (doc. #32)
filed by third-party defendant Jim Moody.   Defendant and Third-
Party Plaintiff, Holden Business Forms, Inc. ("Holden"), has not
filed a response.   After review, the Court concludes that Holden
has failed to plead facts in support of essential elements of each
of its claims under the Texas Uniform Fraudulent Transfer Act
("TUFTA"), and that it has failed to make any factual allegations
in support of its claim under the Texas Theft Liability Act
("TTLA").  As a result, Moody's motion will be granted.   The Court
also reconsiders the motion to dismiss (doc. #15) filed by third-
party defendant Frost Bank, N.A. ("Frost").   After reconsideration,
the Court will partially vacate its previous order (doc. #30)
granting Frost's motion.

I.  Background

     This factual statement is based on Holden's third-party
complaint, taking all well pleaded facts as true and liberally
construing the pleadings in Holden's favor.  *See Kaiser Aluminum &*
*Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050

(5th Cir. 1982).  In June 2002, the plaintiffs in this case leased commercial real property to Holden.  Holden later sold the business that it operated on the leased property to defendant NC Communications, LLC ("NCC"), under an asset purchase agreement. Just after NCC purchased the business from Holden, it took out a loan of approximately $500,000 from Frost.  NCC's principals personally guaranteed the loan.

Under the asset purchase agreement, Holden assigned and NCC assumed primary responsibility for obligations under the lease, including the payment of rent, taxes, and the obligation to remove any lien affixed to the leased premises resulting from tenant occupancy of the premises.  Holden remained liable for these obligations as well.

Holden also advanced to NCC $47,329.84 for ad valorem taxes, including $22,023.63 for personal property and $25,306.21 for real property, as part of the asset purchase agreement.  NCC agreed to hold these funds in trust until annual property taxes were assessed.

Sometime in 2008, NCC's principals sold their ownership interest in NCC to third-party defendant Jim Moody.  As part of that transaction, Moody executed an amendment to NCC's loan agreement with Frost whereby he assumed NCC's prior principals' obligation as the personal guarantor of the loan from Frost to NCC.

NCC failed to pay rent, taxes, and other obligations during 2008, resulting in the placement of a mechanic's and materialman's lien on the leased premises, and a demand by Plaintiffs on Holden

2

and NCC for payment of all sums due under the lease. Tarrant County, Texas, also began proceedings to collect back taxes.

In late 2008, during a conference call among Plaintiffs, Holden, NCC, and Moody, Moody indicated that NCC was failing and that all income received by NCC was being used to pay its debt to Frost. NCC's assets were also being liquidated in an effort to pay down NCC's debt to Frost. The funds advanced by Holden to NCC for the payment of property taxes were also transferred to Frost.

Plaintiffs filed suit against Holden and NCC, alleging each had breached the lease agreement. Based on the various payments to Frost by NCC, Holden has filed third-party claims against Moody and Frost, as well as cross-claims against NCC. Holden's claims against Moody are brought under the TUFTA, Texas Business and Commerce Code section 24.001 et seq. Specifically, Holden brings claims under sections 24.005(a)(2), 24.006(a), and 24.006(b), seeking to void the payments by NCC to Frost as fraudulent transfers. Holden also makes a claim against Moody under the TTLA. Moody now seeks the dismissal of all claims against him.


II.  Discussion

    A.  Standard for Dismissal Under Fed. R. Civ. P. 12(b)(6)

    Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." The Court must accept as true all well pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum*,

677 F.2d at 1050.   The Court must also "limit [its] inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).

The plaintiff must plead specific facts, not mere conclusory allegations, to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).   Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and his "factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

Generally, Rule 12(b)(6) must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court.   Rule 8(a)(2) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding Rule 8(a)'s simplified pleading standard applies to most civil actions).   Moody argues that Federal Rule of Civil Procedure 9(b) applies to Holden's fraudulent-transfer claims.   Under Rule 9(b) "a party must state with particularity the circumstances constituting fraud . . . ."  FED. R. CIV. P. 9(b).

Moody's argument in favor of applying Rule 9(b) begins broadly, asserting that all of Holden's TUFTA claims must be dismissed for failure to satisfy the rule's particularity

4

requirement.  The substance of Moody's argument, however, focuses on section 24.005(a)(1).  The Court would not need to address this argument if Moody's motion were the only one before it, because the Court will dismiss Holden's claims against Moody under that section on other grounds.

But Moody's arguments are not all that is before the Court. As discussed below, the Court is compelled to reconsider Frost's motion to dismiss.  Frost's motion argues that claims under the TUFTA are subject to Rule 9(b).  In the order granting Frost's motion to dismiss, the Court noted that the United States Court of Appeals for the Fifth Circuit has never addressed whether Rule 9(b) applies to the TUFTA generally.  *See Alexander v. Holden Bus. Forms, Inc.*, No. 4:08-CV-614-Y, 2009 U.S. Dist. LEXIS 43338, at *6-*8 (N.D. Tex. May 20, 2009) (discussing the application of Rule 9(b) to sections of the TUFTA that do not require proof of scienter).  But the Court need not address whether Rule 9(b) applies to any claim brought under the TUFTA either, as all but Holden's claim under section 24.005(a)(1) against Frost will be resolved on other grounds.

Some courts in other states have concluded that Rule 9(b) does not apply to claims brought under the version of the Uniform Fraudulent Transfers Act ("UFTA") adopted by the states in which they sit.  *See Ind. Bell Tel. Co. Inc. v. Lovelady*, No. SA-05-CA-285-RF, 2006 U.S. Dist. LEXIS 7996, 2006 WL 485305, at *1 n.5 (W.D. Tex. Jan. 11, 2006) (citing cases).  These decisions are based upon reasoning that some claims under the UFTA may be made

5

without proof of the sort of common-law or actual fraud contemplated by Rule 9(b). *See Van-Am. Ins. Co. v. Schiappa*, 191 F.R.D. 537, 541-43 (S.D. Ohio 2000) (distinguishing sections of the Ohio Fraudulent Transfers Act that do not require proof of intent to hinder, delay, or defraud and those that do, and concluding that while the former are nothing like common-law fraud and, therefore, need not be pleaded in accordance with Rule 9(b), the latter must be). Unlike other sections of the TUFTA that allow for proof of "constructive fraud" as a basis for avoiding transfers,[1] a claim under section 24.005(a)(1) may be based on actual intent to defraud, as well as intent to delay or hinder creditors. *See* TEX. BUS. & Com. CODE § 24.005(a)(1); *see Performance Diesel*, 2002 Tex. App. LEXIS 2735, at *3 (discussing a claim under § 24.005(a)(1) as involving an "actual fraudulent transfer"). Thus, it would seem that, to the extent a claim under that section is based on an intent to defraud, it must be pleaded in compliance with Rule 9(b). *See Schiappa*, 191 F.R.D. at 541-43; *see Lovelady*, 2006 WL 485305, at *1; *Quilling v. Stark*, No. 3:05-CV-1976-L, 2006 WL 1683442, at *5 (N.D. Tex. June 19, 2006) (observing that "most courts hold that Rule 9(b) applies to fraudulent-transfer actions").

---

[1] *See Holden Bus. Forms, Inc.*, 2009 U.S. Dist. LEXIS 43338 at *7-8 & n.2 (discussing sections 24.005(a)(2) and 24.006) (citing *Williams v. Performance Diesel*, 2002 Tex. App. LEXIS 2735, at *3-4 (Tex. App.--Houston [14th Dist.] Apr. 18, 2002, no pet.) (characterizing claims under sections 24.005(a)(1) and 24.006 as involving "constructive fraud")); *see also Carnes v. Meador*, 533 S.W.2d 365, 372 (Tex. Civ. App.--Dallas 1976, writ ref'd n.r.e.) (discussing the difference between the predecessor to section 24.005(a)(1), which requires intent to defraud, and "constructive fraud").

B.  Analysis

1.  Reconsideration of Frost's Motion

In reviewing Holden's pleadings preparatory to ruling on Moody's motion to dismiss, it has come to the Court's attention that Holden pleaded a misappropriation of trust funds that is sufficient to state a claim under the TUFTA.  Holden alleges that it advanced a total of $47,329.84 to NCC for the payment of ad valorem taxes on the leased premises.  Holden further alleges that NCC was to hold these funds in trust until property taxes were assessed.

Holden does not make these allegations in connection with its claims under the TUFTA.  Nor did Holden address the impact of this trust agreement and NCC's alleged violation of such agreement in its response to Frost's motion to dismiss.  Nevertheless, the Court based its ruling on Frost's motion in part on the erroneous understanding that Holden had waived its claims under section 24.005(a)(1).  *Holden Bus. Forms, Inc.*, 2009 U.S. Dist. LEXIS 43338, at *8 n.3.  Having once again reviewed Holden's pleadings, Frost's motion to dismiss, and Holden's response, the Court concludes that, to the extent of the $47,329.84 meant to be held by NCC in trust, Holden has stated a claim under section 24.005(a)(1).

First, the advancement of the funds for a specific purpose qualifies Holden as a creditor of NCC.  The TUFTA defines "creditor" as an entity "who has a claim." TEX. BUS. & COM. CODE ANN. § 24.002(4).  In turn, a "claim" is defined, in relevant part, as "a right to payment or property." TEX. BUS. & COM. CODE ANN.

7

§ 24.002(3).  In interpreting the bankruptcy code's definition of
claim, which contains language almost identical to that found in
the TUFTA, the United States Supreme Court has characterized the
definition as broad, encompassing "nothing more nor less than an
enforceable obligation." *Cohen v. De La Cruz*, 523 U.S. 213, 218
(1998).  NCC's agreement to use funds advanced to it by Holden to
pay property taxes, for which both could be held liable under the
asset purchase agreement, created an enforceable obligation.  *Cf.
Austin v. Cahill*, 99 Tex. 172, 189 88 S.W. 542, 548 (Tex. 1905)
(describing a trust as an obligation created by the transfer of a
fund, for a specific purpose, to a party capable of holding it).
Holden had a "right to payment" in that NCC was to use the funds to
pay taxes for which Holden could be held liable or return the funds
to Holden so that it could do so.  *Cf. Nolana Dev. Assoc. v. Corsi*,
682 S.W.2d 246, 250 (Tex. 1984) (noting that a resulting trust
arises where an express trust fails, and requires the trustee to
return the trust property to the beneficiary or transfer it
according to the beneficiary's wishes).

These factual allegations satisfy the requirement of Rule 9(b)
that the circumstances constituting fraud be alleged with
particularity as well.  To state a claim under section
24.005(a)(1), a plaintiff need not make allegations that would
support a claim of common-law fraud.  *See Nobles v. Marcus*, 533
S.W.2d 923, 925 (Tex. 1976) (stating that a fraudulent-transfer
claim is "in addition to, and separate from" a claim for common-law
fraud).  Thus, Holden need not plead the sort of particulars that

8

are necessary under Rule 9(b) in a common-law fraud case. *Cf.*
*Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)
(requiring a party pleading a common-law fraud claim to allege with
specificity "the statements (or omissions) considered to be
fraudulent, the speaker, when and why the statements were made, and
an explanation of why they were fraudulent"). Rather, Holden need
only allege that NCC, as a debtor, "dispos[d] of or part[ed] with
an asset or an interest in an asset" or incurred an obligation,
with intent to hinder, delay, or defraud any of its creditors. *See*
TEX. BUS. & COM. CODE ANN. § 24.005(a)(defining certain transfers as
fraudulent), § 24.002(12) (defining transfer). Holden has alleged
with particularity the facts surrounding the transfer of the trust
funds by NCC to Frost and why such transfer was fraudulent. *Cf.*
*Flanary v. Mills*, 150 S.W.3d 785, 795 (Tex. App.--Austin 2004, pet.
denied) (discussing proof of a breach of a trustee's fiduciary duty
as proof of fraud).

Holden's allegations also sufficiently allege NCC's intent in
making the challenged transfers. Rule 9(b) allows intent to be
pleaded generally. *See* FED. R. CIV. P. 9(b). Holden has alleged
that NCC had the intent to hinder, delay, or defraud Holden, as
required by section 24.005(a)(1). And Holden has alleged facts
that support an inference of fraudulent intent. According to
Holden's pleadings, after entering into an asset purchase agreement
with Holden, pursuant to which Holden advanced $47,329.84 to NCC to
pay property taxes for which both Holden and NCC were liable, NCC
took out a substantial loan from Frost. When it appeared that NCC

could no longer operate as a going concern, it began liquidating its assets and transferring all available funds to Frost to pay off that loan, including the funds advanced by Holden to pay property taxes. These allegations are sufficient to support an inference that NCC possessed the intent required by secion 24.005(a)(1) in transferring these funds to Frost. *See* TEX. BUS. & COM. CODE ANN. § 24.005(b)(5), (9), (10) (listing factors indicative of intent to hinder, delay, or defraud, including: that the debtor transferred substantially all of its assets; the debtor's insolvency; and that the transfer occurred shortly after a substantial debt was incurred); *see also Flores v. Robinson Roofing & Constr. Co.*, 161 S.W.3d 750, 754-55 (Tex. App.--Fort Worth 2005, pet. denied) (noting that a finding of the intent required by section 24.005(a)(1) may be supported by the circumstances of the transaction, including the badges of fraud listed in section 24.005(b)); *cf. Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 607 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (describing purpose of the TUFTA as "prevent[ing] fraudulent transfers of property by a debtor who intends to defraud creditors by placing assets beyond their reach"). Consequently, that portion of the Court's previous order dismissing Holden's claims under section 24.005(a)(1) will be vacated.

NCC's use of the funds advanced for property taxes does not state a claim under section 24.005(a)(2), 24.006(a), or 24.006(b). Both sections 24.004(a)(2) and 24.006(a) require proof that NCC did not receive reasonably equivalent value in the challenged transfer.

As explained in more detail in the Court's previous order,[2] Holden has not alleged that NCC did not receive reasonably equivalent value in exchange for the transfers made to Frost.[3]   Texas law defines reasonably equivalent value as including, "without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction." TEX. BUS. & COM. CODE. ANN. § 24.004(d). Holden's pleadings acknowledge that NCC transferred "funds to satisfy its obligation to Frost Bank with the specific intent of reducing that debt . . . ." (Third-Party Compl., doc. #20, at p.18, ¶79.)  Holden does not allege that NCC paid an amount in excess of that necessary to satisfy the debt to Frost.  Consequently, Holden has failed to allege that NCC did not receive reasonably equivalent value. *Cf.* TEX. BUS. & COM. CODE. ANN. § 24.004(d); *also cf.* TEX. BUS. & COM. CODE § 24.004(b) ("Value is given for a transfer . . . if, in exchange for the transfer . . . antecedent debt is secured or satisfied . . . .").

Nor does NCC's use of the trust funds alter the Court's conclusion regarding Holden's claim under section 24.006(b).  This section deals with a transfer made to an "insider."  As noted in the previous order, Holden does not allege that Frost meets the

---

[2] *Holden Bus. Forms, Inc.*, 2009 U.S. Dist. LEXIS 43338 at *8-*16.

[3] The Court notes that in its order granting Frost's motion to dismiss, it stated, as part of the analysis of reasonably equivalent value, that "Holden does not contest, in either its pleadings or briefing of the motion to dismiss, that NCC in fact received a dollar-for-dollar reduction of its debt." *Holden Bus. Forms, Inc.*, 2009 U.S. Dist. LEXIS 43338 at *9-*10.  This sentence misstates Holden's burden of pleading.  Holden is not required to plead facts in anticipation of a defensive theory.  Rather, it is Holden's failure to plead facts in support of an essential element of its claim--that NCC did not receive reasonably equivalent value--that makes dismissal appropriate.

TUFTA's definition of insider.

Accordingly, the Court's previous order will be vacated in part and amended to include the foregoing analysis and to allow Holden to pursue a claim under section 24.005(a)(1) against Frost to the extent such a claim is based on NCC's transfer of trust funds to Frost.

2.   Moody's Motion to Dismiss

a.   "Transfer" Under the TUFTA

Turning now to Moody's motion, Moody argues that Holden has failed to state a claim against him under the TUFTA because Holden has not alleged that there was a transfer of an asset to him from NCC.  As discussed in the Court's order granting Frost's motion to dismiss,[4] Holden's claims against Moody are based on the theory that NCC's transfers to Frost amounted to transfers to Moody because, to the extent that NCC's debt to Frost was satisfied, Moody's exposure to liability on his personal guaranty was reduced.

But this benefit to Moody does not satisfy the TUFTA's definition of transfer.  The TUFTA defines "transfer" as a mode of "disposing of or parting with an asset or an interest in an asset." Tex. Bus. & Com. Code § 24.002(12).  "Asset" is defined in relevant part as "property of a debtor" and "property" is defined as "anything that may be the subject of ownership." *Id.* at § 24.002(2) & (10).  NCC's transfers of funds to Frost, although reducing Moody's exposure to liability on the guaranty, did not result in

---

[4] *See Holden Bus. Forms, Inc.*, 2009 U.S. Dist. LEXIS 43338, at *15, *17-18.

12

Moody's possession of a thing that may be the subject of ownership. Rather, Moody was a secondary, although intended, beneficiary of NCC's transfers to Frost.

The only other asset involved in the transfer of funds from NCC to Frost was the guaranty itself.  "A guaranty is a separate contract distinct from the primary obligation."  *Ashcraft v. Lookadoo*, 952 S.W.2d 907, 913 (Tex. App.--Dallas 1997) *pet. denied* 977 S.W.2d 562.  As such, a guaranty may transferred, and rights under a guaranty owned, separate from the primary obligation.  *See FDIC v. Selaiden Builders, Inc.*, 973 F.2d 1249, 1254 (5th Cir. 1992) (listing proof of ownership as an element of recovery on a guaranty).  In other contexts, courts have discussed guaranty agreements as assets that may be bought and sold.  *See Lookadoo*, 952 S.W.2d at 911-914 (evaluating whether a guaranty was included in an asset-purchase agreement); *see also Collection Servs. Ltd. Pshp. v. Thomas*, 3:97-CV-0314-R, 1998 U.S. Dist. LEXIS 9999, at *17-23 (N.D. Tex. June 26, 1998)  (discussing a guaranty as an asset subject to ownership and transfer).

But even assuming that the guaranty satisfies the TUFTA's definition of asset, Holden's pleadings still fall short of alleging a transfer of an asset to Moody.  To the extent NCC paid off its debt to Frost, the guaranty was discharged, not transferred.  *See* RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY, § 19, comment a (1996) ("To the extent that the underlying obligation is discharged by performance or other satisfaction by the principal obligor, the secondary obligation is also *discharged*.") (emphasis added).

13

The Court, therefore, agrees with Moody that Holden's pleadings do not state a claim against him under any provision of the TUFTA because Holden has failed to allege that he received a transfer as contemplated by that act.

2.  Intent to Hinder, Delay, or Defraud

Moody argues that Holden has failed to state a claim against him under section 24.005(a)(1) for the additional reason that Holden's pleadings do not satisfy the particularity requirement of Rule 9(b) and do not include facts that show actual intent by NCC to hinder, delay, or defraud NCC's creditors.

Holden's third-party complaint alleges that NCC has transferred funds to Frost to satisfy NCC's debt and eliminate Moody's exposure to liability under the guaranty.  According to Holden, NCC made such transfers while failing to pay its other creditors.  Under Texas law the mere fact that one creditor receives payments while other creditors go unpaid does not indicate fraudulent intent.  In *Quinn v. Dupree*, the Supreme Court of Texas explains

> In the absence of a law declaring preferences invalid . . . every debtor has the right to pay or secure one or more of his just debts with any property he has, provided that no more property is transferred than is reasonably necessary to pay or secure the debt.  A mere intention to prefer one creditor over the other thus will not vitiate the transaction, and the conveyance or security instrument will not be held void as to creditors unless it was executed with fraudulent intent or amount[s] to a fraud in law.

*Quinn v. Dupree*, 157 Tex. 441, 448, 303 S.W.2d 769, 774 (Tex. 1957).  In a previous case, the court stated:

14

> It is settled law in this State that a creditor may receive payment of an honest debt in property of his debtor though he may know at the time that the debtor's intent in making the payment is to prefer him and to place the property beyond the reach of other creditors, provided that no more property is taken than is reasonably necessary to pay his debt. Every payment of a debt by an insolvent, whether the payment be made in money or property, tends in a popular sense, to hinder, delay or defraud other creditors in the collection of their respective debts.  In the absence of a law declaring preferences invalid, every debtor has the legal right to pay one or more of his just debts with any money or property he has.  The intent to hinder, delay or defraud creditors in the sense inhibited by [the law at issue] cannot exist when the purpose and effect of the transfer of property is to apply it at its fair value to the satisfaction of a just debt and it is so received by the debtor.

*Adams v. Williams*, 112 Tex. 469, 476-77, 248 S.W. 673, 676 (Tex. 1923).   These principles remain valid notwithstanding the subsequent enactment of the TUFTA as part of the Code.  *See Bossier Bank & Trust Co. v. Phelan*, 615 S.W.2d 872, 874 (Tex. App.--Houston [1st Dist.] 1981, writ ref'd n.r.e.) (noting the exception to TUFTA's predecessor which allows a debtor to make preferential transfers otherwise allowed by law); *see also Kaufman v. Morales*, 93 S.W.3d 650, 656 & n.3 (Tex. App.--Houston [14 th Dist.] 2002, no pet.) (noting a debtor's right, as announced in *Adams,* to pay his debts in the order he chooses); *Englert v. Englert*, 881 S.W.2d 517, 519 (Tex. App.--Amarillo 1994, no writ) (stating TUFTA did not alter basic principles announced in cases such as *Quinn*).

As noted, Holden has not filed a response to Moody's motion. This same issue was raised by Frost's motion to dismiss and Holden did not cite any law that barred NCC's making admittedly preferential transfers to Frost.  And although Holden alleges that

NCC's transfers to Frost exceeded the mandatory monthly payment under the financing agreement, Holden has not alleged that NCC's transfers to Frost were in excess of what was reasonably necessary to pay the outstanding balance of NCC's debt to Frost. *Cf. Bramlett v. Jenkins*, 231 S.W.2d 539, 546 (Tex. Civ. App.--Fort Worth 1950, writ ref'd n.r.e.) ("[I]n cases of preferment of one creditor over another, the transfer . . . to the creditor . . . must be confined to values reasonably sufficient to pay the preferred debt . . . ."). As a result, Holden's pleadings fail to allege that NCC intended to hinder, delay, or defraud its creditors as required by section 24.005(a)(1).

That NCC made transfers to Frost while ignoring its other creditors is the only allegation made by Holden in support of its claim under section 24.005(a)(1). Thus, the Court need not address the sufficiency of Holden's pleadings under Rule 9(b).

### 3. Reasonably Equivalent Value

Moody also argues that Holden's allegations fail to state a claim under sections 24.005(a)(2) and 24.006(a) of the TUFTA. Those sections require Holden to plead and prove that NCC, as the debtor that engaged in the allegedly fraudulent transfers, did not receive "reasonably equivalent value" as part of such transfers. *See* TEX. BUS. & COM. CODE § 24.005(a)(2) (defining a transfer as fraudulent "if the debtor made the transfer or incurred the obligation . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation"), § 24.006(a).

As discussed above, NCC did not make a transfer to Moody.

Thus, there is no need to analyze whether NCC received reasonably equivalent value from Moody.  And as discussed above and in the Court's order on Frost's motion to dismiss, Holden has not alleged that NCC did not receive reasonably equivalent value in exchange for the transfers made to Frost.  *See Holden Bus. Forms, Inc.*, 2009 U.S. Dist. LEXIS 43338, at *8-*16.  For this additional reason, Holden has failed to state a claim under sections 24.005(a)(2) and 24.006(a) against Moody.

### 4.   Texas Theft Liability Act

Finally, Moody contends that Holden has failed to state a claim against him under the TTLA.  Holden's factual allegations related to the TTLA do not refer to Moody in any way.  The only mention of Moody in connection with the TTLA in Holden's pleadings comes in Holden's concluding prayer-for-relief section.  There Holden asks that the statutory penalty be assessed against NCC and Moody for each violation of the TTLA.  This is insufficient to state a claim under the TTLA against Moody.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (stating naked assertions devoid of factual development are insufficient under FED. R. CIV. P. 8(a)(2)).

## III.  Conclusion

The Court concludes that Holden's third-party complaint does not allege a transfer to Moody as required to state a claim under any section of the TUFTA.  Holden's pleadings regarding its claim under 24.005(a)(1) do not allege that NCC had the intent to hinder, delay, or defraud required by that section.  Holden's pleadings,

17

with respect to its claims under sections 24.005(a)(2) and 24.006(a), do not allege that NCC did not receive reasonably equivalent value in the challenged transfers. Finally, Holden's claim against Moody under the TTLA is completely devoid of factual allegations and, therefore, insufficient under Rule 8. Accordingly, Moody's motion to dismiss is GRANTED.

Holden's third-party complaint does state a claim under section 24.005(a)(1) to the extent such claim is based on NCC's alleged misappropriation of funds advanced by Holden to NCC for the payment of property taxes. The portion of the order granting Frost's motion to dismiss Holden's claim against it under section 24.005(a)(1) is VACATED. Further, that order is AMENDED to include the foregoing discussion and to allow Holden to pursue its claim under section 24.005(a)(1) based on these funds.

SIGNED July 20, 2009.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

18