```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                      FORT WORTH DIVISION

TOM ALEXANDER, ET AL.            §
                                 §
VS.                              §   CIVIL ACTION NO.4:08-CV-614-Y
                                 §
HOLDEN BUSINESS                  §
FORMS, INC., ET AL.              §
                                 §
VS.                              §
                                 §
JIM MOODY, ET AL.                §
```

ORDER GRANTING IN PART AND
DENYING IN PART MOTION FOR SUMMARY JUDGMENT

Pending before the Court is the Motion for Summary Judgment (doc. #43) filed by plaintiffs Tom and Frank Alexander. After review, the Court concludes that the Alexanders have established, as a matter of law, their claims for past-due rent payments, for clean-up costs, for back taxes, and for amounts paid in attempting to relet the leased property and to extinguish a lien on the property. The Court, however, concludes that the Alexanders have not established, as a matter of law, their claim for future rent. Consequently, the Alexanders' motion for summary judgment will be granted in part and denied in part.

I.  Background

In June 2002, Tom and Frank Alexander leased commercial real property ("the Lease") to defendant Holden Business Forms Company ("Holden"). (Pl.'s Ex. B.) After an extension agreement was entered into by the parties in May 2007, the Lease was to run

through May 31, 2012. (Pl.'s Ex. C.) The Lease required Holden to pay $13,650 in monthly rent, as well as any applicable sales tax, property tax, and general and special assessments. (Pl.'s Ex. B & C.) The Lease further required Holden to ensure that no lien was placed on the property and, in the event a lien were placed on the property, to discharge it by payment, deposit, or bond within fifteen days of being notified of the filing of the lien. Holden occupied the property under the Lease until late 2007.

The Lease prohibited Holden from assigning, subletting, or otherwise transferring its interest in the leased property without the Alexanders' prior written consent. In August 2007, Holden sought and obtained such consent in the form of a Landlord Estoppel Certificate and Consent ("the Consent"). (Pl.'s Ex. E.) In the Consent, the Alexanders agreed to allow Holden to assign its interest in the leased property on the condition that Holden would remain fully liable under the Lease for any obligations that its assignee failed to fulfill.

In September 2007, Holden and defendant NC Communications, LLC ("NCC"), entered into an Asset Purchase Agreement ("the Agreement"). Under the Agreement, Holden assigned the Lease to NCC. (Pl.'s Ex. D.) NCC occupied the leased premises through January 2009, paying rent directly to the Alexanders until July 2008. (Pl.'s Ex. A.) NCC failed to pay the July 2008 rent and has not paid rent since. Additionally, neither NCC nor Holden paid the

taxes due on the property for the 2008 and 2009 tax years.

Consequently, the Alexanders filed this suit claiming that both Holden and NCC had breached the lease and seeking to recover unpaid rent and taxes. The Alexanders also seek a declaratory judgment that Holden and NCC are liable for the monthly rents that would have been paid under the Lease, based on the Lease's acceleration clause. Finally, the Alexanders seek to recover the expenses they incurred in extinguishing a mechanic's and materialman's lien filed against the leased property and in repairing and cleaning the property in an attempt to relet it.

II. Discussion

    A. Summary-Judgment Standard

When the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," summary judgment is appropriate. FED. R. CIV. P. 56(c). An issue is considered "genuine" if "it is real and substantial as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo County.*, 246 F.3d 481, 489 (5th Cir. 2001). Facts are considered "material" if they "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether there are any genuine issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual

issues are material. *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990). Next, the Court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party. *Id.; Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir. 1990).

In making its determination on the motion, the Court must look at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *See* FED. R. CIV. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Rule 56, however, "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). Thus, parties should "identify specific evidence in the record, and . . . articulate" precisely how that evidence supports their claims. *Forsyth v. Barr*, 19 F.3d 1527, 1536 (5th Cir. 1994). Further, the court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

To prevail on a summary-judgment motion, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party bears the burden of proof on the claim for

4

which it is moving for summary judgment, it must produce evidence establishing "beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190,1194 (5th Cir. 1986). Such a movant's showing must be such that the court can conclude that no reasonable trier of fact could find other than for the movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

When the movant has carried its summary-judgment burden, the respondent must go beyond the pleadings and by his own evidence set forth specific facts showing there is a genuine issue for trial. *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 222 (5th Cir. 2004) (citing *Celotex*, 477 U.S. at 324); *see also* FED. R. CIV. P. 56(e). This burden is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

B. Analysis

1. Breach of the Lease

To recover on their breach-of-contract claim, the Alexanders

5

must establish: (1) the existence of a valid contract; (2) that it performed or tendered performance under the contract; (3) that NCC or Holden breached the contract; and (4) that it was damaged by such breach. *See MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 61 (Tex. App.--San Antonio 2005, no pet.).

The Alexanders have provided a copy of the Lease and the extension they entered into with Holden, the validity of which are not disputed by either Holden[1] or NCC. (Pl.'s Exs. B & C.) And NCC does not dispute the Alexanders' argument and supporting evidence that NCC assumed primary responsibility for Holden's obligations under the Lease. To the contrary, while in its answer to the Alexanders' complaint NCC denies direct liability to the Alexanders, in its answer to Holden's cross-claims, NCC admits that "Holden assigned and NCC assumed liabilities under" the Lease. (Orig. Ans., doc. #7, at ¶¶1, 11-12; Am. Ans. to Crossclaim, doc. #23 at ¶7.)

And regardless of NCC's admission, the evidence establishes that it assumed primary responsibility for Holden's obligations under the Lease. The Agreement provides:

> <u>Assumed Liabilities</u>: Under and subject to the terms of [the Agreement, NCC] hereby assumes and agrees to pay, perform and satisfy when due each Assumed Liability.

---

[1] Holden has not filed a response to the motion. Nevertheless, the Court must ensure that summary judgment in favor of the Alexanders against Holden is proper. *See John v. Louisiana*, 757 F.2d 698, 709 (5th Cir. 1985) (stating that grant of summary judgment cannot be based solely on lack of response).

6

> "Assumed Liability" means each liability or obligation of [Holden] for, under or regarding each of the following:
> (a) each Assumed Contract

(Pl.'s Ex. D at Art. 1.3.)  The Agreement defines "Assumed Contract" to include the Lease. (*Id.* at 1(e) & Ex. 1.1(e).) NCC offers no argument or evidence to contradict this.  Consequently the Court concludes that NCC and Holden are both liable to the Alexanders for any breach of the Lease committed by NCC.

Next, the Court must determine what acts or omissions alleged by the Alexanders constitute a breach of the Lease and whether the Alexanders have offered competent evidence to establish one.  The Lease imposed on Holden and, via the Agreement, upon NCC, an obligation to pay $13,650 in monthly rent. (Pl.'s Ex. at Art.3.B.) According to the declaration of Frank Alexander, NCC failed to pay rent when it became due in July 2008 and has not paid rent since. Again, NCC offers no argument or evidence to contradict this. Hence, the Court concludes that the Alexanders have established that Holden and NCC breached the Lease by failing to pay rent beginning in July 2008.

Next, the Alexanders seek recovery for the costs incurred in attempting to relet the property.  This is actually two claims: one for the expenses incurred in cleaning up the property and one for payments made to real-estate brokers retained by the Alexanders. First, as for clean-up expenses, the Lease imposes on Holden and, by way of the Agreement, NCC, the duty to "maintain [the property]

7

in good order and repair" at their own cost and expense and to "remove promptly all trash and garbage" from the property. (Pl.'s Ex. B at Art.14.) In his declaration, Frank Alexander states that, when NCC abandoned the premises, personalty, trash, and chemical waste were left behind. Competent summary-judgment evidence in the form of photographs of the property taken after NCC's abandonment confirms this. (Pl.'s Ex. F.)

NCC argues that it was Holden that left the waste in the leased property. Even accepting this as true, it does not create a fact issue on whether a breach of the Lease occurred for which the Alexanders may hold NCC liable. NCC was obligated to maintain the property in good order and to remove waste promptly. Neither the Lease nor the Agreement qualify this duty based on the source of the waste or damage.

The Alexanders also seek recovery for amounts paid to two real-estate brokers in an effort to relet the property. And while they have not pointed to any provision of the Lease that provides for their recovery of such expense, it is recoverable as consequential damages of the failure of NCC and Holden to pay rent and NCC's abandonment of the leased property. *See Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex. 1998) (defining consequential damages as "those damages that result naturally, but not necessarily, from the defendant's wrongful acts"); *see* 2 William V. Dorsaneo III, Texas Litigation Guide § 21.11[5][a] (2009)

8

("Reasonable expenses incurred in mitigating damages . . . may be added to the injured party's recovery."). In his sworn declaration, Frank Alexander states that payments were, in fact, made to real-estate brokers in an effort to relet the property. Thus, the Alexanders have established their entitlement to recover on this claim.

The Alexanders have also established their entitlement to recover property taxes for the 2008 and 2009 tax years, as well as for the money expended to extinguish the lien. During the term of the Lease, Holden is responsible for "the combined real property taxes and general assessments and special assessments [that] may be levied or assessed by any lawful authority against the Leased Premises and any improvements thereon made by [the Alexanders] or [Holden]." (Pl.'s Ex. B at Art.4A.) According to Frank Alexander's declaration, taxes assessed in 2008 and 2009 total $43,651.95, and neither Holden nor NCC has paid on this amount. (Pl.'s Ex. A at ¶5.) Holden and NCC neither object to nor offer anything to contradict this.

Alexander also declares that $3,800 was paid to extinguish a mechanic and materialman's lien. The Alexanders have established that Holden and NCC are obligated to pay for any lien NCC allowed to be placed on the property. The Lease provides "[Holden] shall discharge any lien, encumbrance or charge arising out of the work of any contractor, mechanic, laborer or material contracted for by

9

[Holden]." (Pl.'s Ex. B at Art.11.)  Again, NCC offers no contrary argument or evidence.

      b.    Damages for Breach

First, regarding back rent, the Lease requires that $13,650 in monthly rent be paid and Frank Alexander's declaration states that no payment has been made since June 2008.  The Alexanders also acknowledge that third-party defendant Frost National Bank, NA ("Frost"), occupied the leased property from January 29, 2009, to March 18, 2009, paid $24,587.14 in rent, and that the liability of NCC and Holden for back rent should be reduced by this amount. Other than seeking this credit, NCC does not challenge the Alexanders' arguments or evidence regarding damages.  In fact, although it argues that the Alexanders' claim for future rent should be reduced due to their failure to mitigate such damages, NCC does not argue that the claim for back rent should have been so mitigated.  This is despite the fact that, under Texas law, the duty to mitigate is triggered when the tenant breaches the lease and the landlord elects to treat such breach as an anticipatory repudiation of the lease, or when the tenant abandons the lease. *See* Tex. Prop. Code Ann. § 91.006 (a) (Vernon 2007) (imposing on landlord duty to mitigate if tenant abandons leased premises in violation of the lease); *see also Austin Hill v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299 (Tex. 1997) (discussing a landlord's

10

remedies for a tenant's breach of lease and the duty to mitigate). Consequently, the Court will grant summary judgment in favor of the Alexanders on the breach-of-contract claim in the amount of $152,863.86.

The Alexanders also seek to recover $22,784.87 as the combined cost of cleaning up the premises and retaining two real-estate brokers in an effort to relet the property. Additionally, the Alexanders seek to recover $3,800 paid to extinguish a lien on the leased property and $43,651.95 in back property taxes. As discussed above, the Alexanders have established their entitlement to recover on these claims and proven through Frank Alexander's sworn declaration that damages in these amounts were suffered. Accordingly, neither NCC nor Holden having challenged these amounts or the underlying evidence, the Court will grant summary judgment on these claims in these amounts.

### 2. Declaratory Judgment

The Alexanders seek a declaratory judgment that Holden and NCC are liable for future rent payments, under the Lease's acceleration clause, through the end of the term of the Lease--May 2012. The clause states that, in the event of a breach by Holden or NCC, the Alexanders have the right "to accelerate the rent and other amounts payable [under the Lease]." (Pl.'s Ex. B at Art.20C.) According to the Alexanders, future rents through the end of the Lease total

11

$464,100.

NCC does not challenge the Alexanders' right to recover under this clause and, in light of the Agreement, the Court concludes that both NCC and Holden are liable for future rents due under the Lease. NCC does, however, challenge the amount of damages claimed by the Alexanders. Under Texas law, when a landlord treats a breach of a lease as a repudiation of the lease and reenters the premises, or when the tenant abandons the property, the landlord has a duty to mitigate the lost rents through "objectively reasonable efforts to fill the premises when the tenant vacates in breach of the lease." *Austin Hill Country Realty v. Palisades Plaza*, 948 S.W.2d 293, 299 (Tex. 1997); *see also* Tex. Prop. Code Ann. § 91.006 (Vernon 2007). The proper of measure of damages for future rent is the rent payments that would have been paid under the lease, reduced to present value, and further reduced by the amount the landlord received or could have received through mitigation. *See Cash Am. Int'l v. Hampton Place*, 955 S.W.2d 459, 462 (Tex. App.--Fort Worth 1997, pet. denied). The landlord's failure to mitigate is an affirmative defense. *Id.* at 462. As such, the tenant bears the burden to show that the landlord has not mitigated his damages and the amount by which he could have reduced his damages through mitigation. *Austin Hill Country Realty*, 948 S.W.2d at 300.

In support of their argument that the Alexanders did not

12

properly mitigate their damages, NCC offers the affidavit of its president Jim Moody. Moody was named as a third-party defendant in this case by Holden but the claims against him have been dismissed. Moody states in his affidavit that he is familiar with the leased property and that it "would be attractive to a commercial tenant due to the property being in good condition and in an excellent location. A commercial tenant could likely be found to lease [the] property at a lease rate of $9,000 to $10,000 a month." There is no discussion of Moody's qualifications to make such an assessment, nor any discussion of the analysis or investigation that went into coming to this conclusion. This conclusory statement is not sufficient evidence to support NCC's failure-to-mitigate defense.

Nevertheless, the Court must deny the motion for summary judgment on the Alexanders' claim for declaratory judgment. As noted, the proper measure of damages is the expected flow of rental payments under the lease, reduced to present value. The Alexanders have not provided the figure, but have instead simply multiplied the number of months remaining on the lease by the monthly rent.

### 3. Attorneys' Fees

The Alexanders also seek to recover attorneys' fees as part of their motion. Because the Court's ruling does not fully resolve their claims, the Court will withhold ruling on the request for attorneys' fees.

13

III.  Conclusion

The Court concludes that the Alexanders have established, as a matter of law, their claims for past rental payments, unpaid property taxes, and amounts incurred in cleaning the premises, attempting to relet the leased property, and in extinguishing a lien on the property.  Thus, summary judgment is GRANTED in favor of the Alexanders on these claims in the amount of $223,100.68.

However, the Court concludes that the Alexanders have not established, as a matter of law, their claim for future rent payments.  Accordingly, the motion for summary judgment is DENIED on this claim.

SIGNED November 16, 2009.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

TRM/jar

14